Good morning, Your Honor. James L. Rosenberg appearing on behalf of the petitioner Vardanyan. Your Honor, this is not as lofty as what I just listened to, and I don't think it's as complicated either. This is a credibility issue. The thing that troubled me most about this case is it did not seem like he was telling the truth about not getting in touch with his mother. Well, actually, I think he was not telling the truth on a couple of things, but allow me to put this in the correct perspective. I have, at this time, and I was not his trial counsel, I have an 18-year-old child, and I use that word deliberately, who went from secondary school, what we consider high school, straight into the military for two years, and I think he said 15 days. That's where most of the problems happen. There are some problems that happen afterwards. This is not what you'd call a well, streetwise kid. This is a person who didn't get a hold of his mother, which, by the way, still bothers me, but I'm presuming that the father had something to do with that, although the record is blank. That would be great if he said so. If he'd said, I had this big fight with my mother, and she said, I'm never speaking to you again, and I said, I'm never speaking to you again. Actually, I didn't interpret it that way. But he didn't say that. He didn't say anything like that. First, he said, oh, I can't find her. Then he said, she's in a village in Russia, and there's no phone. Then he said, we can't arrange your phone calls, because when she's there, I'm not there, and when I'm there, she's not there. And the timing gets askew, and it doesn't make a whole lot of sense to us in the United States. He could write her from the U.S. I just couldn't figure it out. The parts on this that confuse me, I see four subject matters. One is the same one you're looking at, except my analysis of the father's possible involvement is a little different than yours. I suspect he supported the Kocharian administration. That was the party in person who's now president and was president then. And probably disapproved of his son's and his wife's involvement against the administration and basically stopped it. But I don't have that evidence. I can only presume. If you acknowledge that he's given false testimony in several respects, as I think you said at the beginning. I did say it. Why isn't the I.J. entitled to conclude that this is not a credible person? Your Honor, the false testimony that the I.J. specifically hangs on, this is what sticks in my mind, relates to a conference my clients had with an officer of the Armenian government after he was released from the army, in which he gave testimony as to events he had witnessed, because that particular government official was investigating those events. And then afterwards, when this gentleman was assassinated, and I think it was a short time after the interview, an internal security police, what he kept calling KGB, which by the way in Armenia doesn't exist, it's internal security, were asking him about the interviews. He was reluctant to even tell them, and he denied he had a meeting. And Judge Martin basically said you shouldn't have denied you had a meeting. You should have denied what you talked about. So in other words, to the bench, one lie is wrong, but the other lie is right. And that doesn't make any sense either. And I know Judge Martin. He's a very good judge. I don't mean to pick on him in any way. I trust him. But I don't understand the logic. I think his logic was, I don't believe you told them that lie, because that lie wouldn't have made any sense. Everybody saw you going into the office and going out of the office. It doesn't make any sense for us, but I haven't been 20 or 21 in a long time. A 21-year-old, this might make sense. At this point in time, he was out of the Army, which he entered on his 18th birthday. He stayed in the Army two years, I think, again, 15 days. Left him off by a few days. I apologize. And then he was discharged or released, however you want to look at it. We've got a 20-year-old who's not sophisticated. He's high school educated. I will openly admit he's a lousy liar. And I hope he stays a lousy liar, because I hate to see adults, he's older now, get their way through life on falsehoods. But he's in an uncomfortable political situation in Armenia where the freedoms and protections you and I not only are accustomed to, but we rely on them, don't exist. Why should we believe that he in particular, as opposed to anyone living in a nasty country, is in danger, considering we don't know what he said that's true? Well, we know he was hospitalized from a beating, because nobody questioned that during the trial, and he came up with medical records. We are told, and I wish I knew where his mother was, because I'd love to get my hands on the articles, that his mother had to leave the country into Russia, which, by the way, is a very big country. As to where the mother is, I'm not going to pretend I know. These are published articles, right? Your Honor, published articles in a small women's rights magazine doesn't mean that you can go to the public library and pull them out. They don't put it on the net? Not at that point in time. I tried. And, by the way, items that can be put on the net can also be taken off the net. There are ways to do it. And the government in Armenia, and I speak from what I know of today, because, again, I did not represent this gentleman when this went to trial, government is very capable of removing things and making little things disappear that don't appeal to the administration of Mr. Kocharian or those who are supporting him. Unfortunately, it's not an ideal world where he guarantees that this court protects. It's not guaranteed in other countries. You've made a good point that there might be explanations for these lousy lies as you characterize them. I'll recharacterize it if you have a better phrase, but to me they're just lousy lies. And it's possible that your construction of this is right, but wouldn't we have to find that the I.J. was not only wrong but off the wall to find your guy incredible? On a couple of the items that Judge Martin relied on, such as, among other things, this high military position he had as an operator, because that's what I interpret it as. I think he had about a half dozen people under him running the radio. No, he answered the telephones. It's in the transcript. If I was running a regime that did a whole lot of dirty stuff, gosh, if I was running a little mafia social club, I think I'd keep an eye on who's running the telephones. I'm not going to pretend I'm a military expert. I'm not. I have some experience with the U.S. military, which is relatively clean sometimes. But this is a guy that's answering phones and transferring them. I don't think that's a big discretionary position. I didn't ask my question very well. What I meant to say is in order for us to reverse this I.J., we'd have to find that no I.J. could have made the credibility decision that he made. No reasonable person could disbelieve your guy. And after you come up and say that he's a lousy liar, I'm having a hard time finding how we can say that no reasonable person could find your client incredible. Well, Your Honor, under certain circumstances, as was presented in some of the cases that were cited, sometimes there's reasons to lie. The lies relating to the interview after the discharge from the military is quite simply that he was at the interview, asked if he had some protection from anyone taking retribution against him for giving out, quote, military secrets. And I don't see them as military secrets. I do see them as political embarrassments to the people in power. And he was told yes. Well, his protector was assassinated. I'd probably lie, too, because I don't have anyone to keep me intact under those circumstances in another country. This is why I can't sit here and tell you he didn't lie. It's obvious to me on some areas he did. And I won't insult the court by saying otherwise. But I will tell you that under certain circumstances, telling a lie is better than being killed. And under certain circumstances, to protect one's ability to stay alive, you do exaggerate lies. I frankly agree with you on that. And I think you make a very strong point on that. That's why I focused on the mother, because I couldn't see anything other than this, than just making up stories that would explain that. The only argument I could make as to the mother, and I am speculating, and I want the court to be aware of that, is he states that his contact with his mother, and I use the word contact loosely, is through his father. And it becomes apparent to me, because the father's having no trouble in Armenia. They aren't chasing him, or at least we're not told they are. They're not chasing him because of what the mother did. They're not chasing him because of the son's activity. I have to presume the father is a supporter of the political administration presently in power. They're not bothering him because he's not fighting with them, and he most likely does not approve of the acts of the son or his wife, who's now in Russia. But that doesn't necessarily make my client lying on it. It just eliminates a little bit of communication. Let's say you're right. I mean, that makes sense to me, too, that the reason the father was happily ever after in Armenia is he had a domestic dispute with the mother and dropped a dime on her. Something like that. But I still don't understand why the kid, safely in America, wouldn't tell the truth about why he's not contacting his mother. I don't have a sophisticated, I'm going to use your word, kid, because it's probably accurate. And I, you know, again, on some of these things I'm reasonably certain he has not told the whole truth, with some reason. And the unfortunate part is you do reach a period where, in the minds of a 20, 21-year-old, that's the range he's at when he left. He starts to get confused as to what becomes the truth and what is not. I do believe the basic statements he has made, and I think I'm now over my time, according to the red light that says stop. Go ahead and finish your sentence. The basic statements he's made have a very strong string of truth in it, but there's been some exaggerations, and there have been on some areas where I'm positive or outright lies, that he did to protect himself. As to whether an individual can lie and should get a benefit from it, well, if I was talking to my daughter, and I have one young child left, I'd say no. You're right on the truth, even if the results are bad. But we're in a country where there's protection for it. If I were living in Armenia under the circumstances this young man was in, I may give different advice to one of my children. Thank you, counsel. Thank you, Your Honor. May it please the Court. My name is Anne Tumai. I represent the United States Attorney General. The question here is whether the record compels a finding that Mr. Vardenian was credible. The answer is no. His own counsel has stated that there's no doubt that he wasn't telling the truth and tries to offer explanations based on his age. Well, consider one that when asked questions to try to explain the various inconsistencies and illogical connections in his testimony, Mr. Vardenian did not try to state that, well, he didn't understand because he was so young. And the issues that were identified by the immigration judge with Mr. Vardenian's testimony were serious issues. With respect to his mother, it makes little sense that someone who he obviously respected, whose opinion he sought out when he had problems within the military on a regular basis, at least every other month or so, whenever he had an opportunity to send a letter to his mother, Mr. Vardenian did so. And then suddenly, after that last letter in 1998, when he is now free to contact his mother, he makes no effort whatsoever and is simply content to sit back and listen to whatever his father says, particularly when Mr. Vardenian's father didn't seem to be in the picture prior to 1998. The other concerns that have been raised deal with his lies. And it's stated that, well, in some cases, a lie is appropriate. It is, but in this case, Mr. Vardenian's lies do not justify. There are some of the arguments about the lies that Petitioner's Counsel makes that strike me as good. As long as you're in a foreign country and the politics are a miserable, tangled web, you better deceive along with everybody else. And when you don't know exactly what the people asking you questions know and you know it could be real dangerous to give the wrong answers, making up a lot of fairy tales may make a lot of sense. So I wasn't entirely persuaded by the I.J. saying, well, he shouldn't have told the KGB, his careless name for the local security people, this, and it made no sense to tell him that. A kid might tell him any kind of fairy tale just to get him off his back and avoid trouble. It's more lies when he can no longer get in trouble and get beaten up or put in jail or something that concern me. And I'm wondering how much the I.J. relied on trying to figure out what was going on with the kid's story in Armenia as opposed to here. Your Honor, first of all, to the extent that there are any inconsistencies and doubts with his testimony, Petitioner bears the burden of explaining those inconsistencies. It's not a matter of the immigration judge trying to discern that. It's up to the Petitioner. The other thing is there the ---- I want to give the premium to people that need asylum, not to the people who are more intelligent than average. Yes, Your Honor. But here there's a couple of different issues because even when he had an opportunity not to lie, Petitioner did so. And when he tried to explain some of the one lie he made regarding the KGB, it was inconsistent. He ---- the I.J. said that, fine, well, then, you did lie because of the circumstances. That makes sense. But why did you only lie regarding a fact that could be proven, especially when you were aware that the group he identified as the KGB knew about his meeting with the deputy minister? I used to represent a fair number of stupid people when I did criminal defense. And when they'd finally get pinned down and I'd ask them in my office, well, why did you say that then, the real true answer when they gave it to me was, I don't know. Your Honor, when it comes down to it, this Court has stated that as long as there is some basis for the immigration judge, and he has identified a specific cogent reason for questioning the Petitioner's credibility finding, in this case, there is no evidence which has been identified which compels a contrary finding to the decision made by the I.J. Petitioner's counsel has even stated that he's lied and that there were a number of lies and that he was a bad liar. Even if that's the case, there's nothing that he's explained or identified in the record which would question that adverse credibility finding. Perhaps he had certain circumstances where he might lie, maybe he was a bad liar, but that doesn't justify or result in compelling a reasonable fact finder to determine that he was not credible. What do you think his most revealing lie is that he told that we can hang our hat on? Your Honor, there are at least three in terms of the most significant reasons. One, the illogical explanation about his making no effort to communicate with his mother. Notwithstanding any of his other arguments with respect to his exchanges with the KGB, it makes no sense that he changed from being communicative with his mother and making every effort to do so, and then all of a sudden stopping once he was free to try to make efforts to communicate with his mother. And his explanations are simply that he was at work and he missed her calls. There was never any effort to actually schedule a time, even when in contrast to the fact that he tried to send letters whenever possible. Why is his relationship with his mother all that important to us? Your Honor, because his testimony is that in part some of the problems he had were related to his mother's involvement in the military. And the other thing that is important is because he sought her assistance because he was concerned about the problems he faced while in the military. So she had more direct contact with him than anyone else, at least in the form of letters that expressed his concerns and fears. So he says, I haven't talked to my mother in a while, and the IJ says, therefore, I don't believe your story. Your Honor, that's one of the reasons where it doesn't make sense that you didn't do that when you thought your mother was very important before to how you should manage your problems with the military. I suppose if he wanted to, he could have said, I talked to her on Tuesday and she wishes me good luck and no one would have known otherwise. He could have done that. However, he did not do that, but it still doesn't make sense that he had made no effort to do so. Okay, so the mother, no contact with the mother is the first big lie. What's the second one that we shouldn't? All of these equally are important, but the second one also deals with the fact that he claims that he was a threat to the KGB, that they perceived him as someone who would compromise their military secrets. If that was the case, then why did they make no real serious effort to secure him once he was hospitalized? There was no guard. There was some confusing testimony as well related to whether or not ---- What exactly is the falsehood there? His perception of his importance or what? What's exactly the falsehood? What did he say that's demonstrably false? Your Honor, what's false is that they were ---- they perceived him as being a serious threat. I didn't get that one. It seemed to me like government bureaucracies are kind of sloppy all the time. Even with what's probably the best possible security there is for the President of the United States, that crazy guy managed to shoot President Reagan. Your Honor, in this case, we have someone who has claimed that he is of such significance that if he were to return to Armenia, he would be a threat and that they're still looking for him. If that's the case, then he needs to establish that he was a threat to them. Here, it doesn't make any sense. It's inconsistent at a minimum, even if it's not a direct lie. It's an inconsistency that bears on the adverse credibility finding. The other important issue here relates to his testimony or his explanations about why he lied to the KGB about his meeting with the deputy minister. That lie was something he even stated the KGB were fully aware of and that they could prove by witness testimony that he was there. What's your answer to Judge Kleinfeld's point? When you're being interrogated by the KGB, you'll tell them anything and everything that you think will get you off the hook. Then why did he not lie about what was communicated with the deputy minister when there was no evidence or anyone to contradict him? During that point, and his only explanation for the fact that he did not choose to lie about it was that he could not lie because they wouldn't believe him and that they would be able to find out. Well, that makes no sense because he himself stated that there was no one else in the room, that it was a private meeting. So, if anything, he could have lied about what was communicated to the deputy minister and he should not have lied about the fact of the meeting. Please sort of like the criminal defendant who says, I wasn't even there, tries to get his lawyer to put on an alibi defense when really he has a perfectly good defense. He was there, but he was not a participant, and he's not smart enough to tell the truth. Your Honor, I see that my time is up. May I conclude? Please answer. Yes, it's similar, but it's also very different, Your Honor, because in the context of a criminal case, we don't have the same kind of issues. We don't have the same type of review standard. Here, we're looking to see, well, is there compelling evidence in the record to require us to conclude that he was in fact credible? Here, there's an admission that he did tell lies. There's no identification of specifically what evidence would compel someone to find that he was telling the truth. Thank you, Your Honor. Thank you, counsel. Thank you. Bar-Danion versus ‑‑ unless my colleagues wish to hear the result, we'll go on over. Bar-Danion versus Gonzales is submitted. We'll hear Verchalion versus Gonzales.
judges: Lay, Kleinfeld, Silverman